UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FILED
U.S. DISTRICT COURT
2004 NOV -5 A 10: 41
S.D. OF N.Y. W.P.

DR. LAWRENCE GLASS,

    Plaintiff,

vs.

NEW YORK STATE OFFICE OF
MENTAL HEALTH, MICHAEL
HILL and HAL SMITH, sued in
their individual capacities,

    Defendants.

----------------------------------------x

**Complaint**

**04 CIV. 8723**

**BRIEANT**

Plaintiff, a state-employed psychiatrist, contends that he was terminated after making clear to supervisory personnel that certain state-condoned practices were improper and contrary to applicable standards.

## PARTIES

1. Plaintiff, a resident of the City of Middletown, County of Orange, State of New York, is an adult male of legal age. He may sue and be sued.

2. Defendant Michael Hill is a resident of the County of Rockland, State of New York, within this judicial district. He serves as Unit Chief of a Sullivan Satellite, which is associated with Central New York Psychiatric Center.

3. Defendant Hal Smith is a resident of the State of New York, an employee



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

-1-

of the State Department of Correctional Services and serves as Director Mental Health, for Central New York Psychiatric Center.

4. Defendant, New York State Office of Mental Health, is a state agency which may be sued for injunctive relief. It operates within this judicial district.

## JURISDICTION

5. As plaintiff contends that defendants violated his constitutional right to free speech by retaliating against him for his speech acts and as plaintiff seeks injunctive, not monetary relief from the State agency defendant, this Honorable Court has jurisdiction pursuant to 28 U.S.C. secs. 1331, 1343(3) and (4) and 42 U.S.C. secs. 1983 and 1988.

## FACTUAL ALLEGATIONS

6. Effective April 29, 2004, plaintiff started working as a full-time psychiatrist in the mental health unit at Sullivan Correctional Facility, a state-operated penal institution. Plaintiff was employed by the New York State Office of Mental Health and assigned to this facility.

7. Plaintiff was provided one evaluation during his probationary period. Dated July 29, 2004, it evaluates plaintiff as average or above average in all categories and recommended plaintiff's continued employment, not his termination.

8. During the last week of his employment, plaintiff raised concerns about the treatment accorded to an inmate who was being housed in the Special Housing Unit at Sullivan Correctional Facility.

9. Without basis, this inmate was classified as mentally unfit and transferred to plaintiff's unit.

10. Plaintiff objected to this classification, noting that while the inmate's behavior was quite anti-social, he did not meet the criteria for mental illness used to house someone in the mental health unit.

11. Thereafter, without plaintiff's support, Hill decided to transport this inmate to Central New York for stabilization of his alleged mental health instability.

12. After one day, Central New York sent the inmate back to Sullivan, finding that there was no treatment modality available for him.

13. Upon the inmate's return to Sullivan, he was housed briefly in plaintiff's unit.

14. Plaintiff did not believe that the inmate should remain in the mental health unit.

15. Thereafter, Hill and a group of corrections officers forcibly removed the inmate from the mental health unit by using gas cannisters. Four cannisters

misfired and a fifth, sent from the Woodburne Correctional Facility, worked. The

inmate was transported without resistance.

16. Plaintiff complained that this forcible removal was unwarranted and contrary to policy.

17. Indeed, the inmate weighed about 140 pounds and the force and means used to subdue him were excessive.

18. Before the events set forth in paras. 14-16, on or about Monday, August 2, an upset Hill called plaintiff into his office and told him that he had heard that plaintiff had opposed the initial decisions Hill had made with respect to the inmate.

19. On this occasion, plaintiff explained to Hill that he did not feel there was basis for the decisions either to place the inmate in the mental health unit ot to send him to Central New York.

20. On August 3, Hill, plaintiff, other staff and Sharon Osborne, from Central New York, conducted a conference call concerning the treatment of the inmate.

21. During the call, Osborne questioned Sullivan's handling of the inmate.

22. During this call, plaintiff, who suffers from sleep apnea, fell asleep.

23. After plaintiff fell asleep, Hill came across the room and kicked

-4-

plaintiff quite hard in the left leg.

24. This blow awakened plaintiff who quickly left the room.

25. Plaintiff was unable to return to work and provided a medical note advising that he would be out of work until early September 2004.

26. Plaintiff's doctor advised that Hill's kick had exacerbated a serious groin injury from which plaintiff suffered in 2002.

27. After Hill kicked Plaintiff, Dr. Glass called defendant Smith who stated that he was not going to be fired and that he, Smith, would try to find plaintiff another place to work, separate and apart from Hill and certain other environmentally adverse conditions which existed at Sullivan.

28. On or about August 16, 2004, while out on disability stemming from the effects of Hill's kick, plaintiff learned that he had been terminated.

29. Thereafter, plaintiff called defendant Smith and protested his firing.

30. Defendant Smith did not defend the firing, but, instead, cursed at the plaintiff.

31. Defendants terminated plaintiff because of his expressed concerns about the handling of the inmate referenced above.

32. Plaintiff was proficient at his job, had worked at Mid-Hudson Psychiatric Center dealing with severely emotionally disabled inmates for

fourteen years, had testified in court more than 200 times and his service provided no legal or legitimate basis for termination.

33. Defendant Hill recommended plaintiff's termination which was sent through Smith who had to ratify it.

34. By dint of his termination, plaintiff has suffered emotional anxiety, depression, humiliation, loss of self-esteem, as well as material detriments, including loss of salary, benefits and pension rights.

35. Defendants acted knowingly and maliciously, in plain violation of plaintiff's constitutional rights.

## CAUSES OF ACTION

36. Plaintiff hereby incorporates paras. 1-35 as if fully re-written herein.

37. By terminating plaintiff for his protected speech, defendants violated his right to be free of retaliation for protected speech in violation of the First Amendment, as made actionable against these defendants by 42 U.S.C. sec. 1983.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction of this matter;

b) empanel a jury to hear and decide disputed issues of fact;

c) award to plaintiff compensatory damages for the pecuniary and non-

pecuniary damages plaintiff sustained as a consequence of the wrongful conduct of the defendants;

    d) award punitive damages to plaintiff in a sum to be set by the jury for the malicious and spiteful violation of his constitutional rights in which defendants engaged;

    e) order defendant State of New York Office of Mental Health to re-employ plaintiff in his former capacity with a return of his seniority and benefits, and

    f) enter any other relief which the interests of justice require.

    Respectfully submitted,

    MICHAEL H. SUSSMAN (3497)

SUSSMAN LAW OFFICES
PO Box 1005
Goshen, New York 10924
(845)-294-3991
Counsel for Plaintiff